UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MANPREET KOHLI, )<br>)<br>Defendant )<br>) | Crim. No. 1:24-10189-AK |

### GOVERNMENT'S PRELIMINARY OPPOSITION TO DEFENDANT KOHLI'S MOTION TO DISMISS

The government respectfully submits this preliminary opposition to defendant Manpreet Kohli's motion to dismiss the indictment (Dkt. 55).

Kohli files his motion from his home country of the United Kingdom, where he continues to fight his extradition to the United States on the charges in the indictment. The Court need not—and should not—permit Kohli to seek relief from the Court while concurrently attempting to avoid the Court's jurisdiction altogether. For the reasons set forth below, the government respectfully requests that the Court deny Kohli's motion to dismiss or, alternatively, hold it in abeyance until Kohli arrives to the United States and appears before the Court in this matter.[1]

### BACKGROUND

On September 19, 2024, the grand jury returned a Superseding Indictment (Dkt. 10, the "indictment") charging Kohli, Mohsini, and a third defendant (Nam Tran) with conspiracy to

---

[1] After Kohli filed his motion to dismiss, co-defendant Haroon Mohsini—who lives in the United States and has appeared in this matter—filed a motion to join Kohli's motion to dismiss (Dkt. 56). The government therefore will address the merits of the arguments in the motion to dismiss in response to Mohsini's motion.

commit market manipulation, conduct an unlicensed money transmitting, and commit wire fraud (Count One); market manipulation (Counts Two through Four); and wire fraud (Counts Five through Seven).  The indictment alleges that Kohli, Mohsini, Tran, and other leaders of the cryptocurrency company Saitama LLC ("Saitama") conspired with each other to artificially inflate the price of Saitama's cryptocurrency token, the Saitama Token, through manipulative trading and false and misleading statements, and thereby profit by selling Saitama Tokens.  Dkt. 10.

On October 7, 2024, the indictment was unsealed, and Kohli was arrested in the United Kingdom, where he resided during and after the conduct alleged in the indictment.  The United States submitted its formal extradition request to the United Kingdom on November 6, 2024.

Kohli is contesting his extradition to the United States while on release in the United Kingdom.  On several occasions since the initiation of extradition proceedings, Kohli has successfully delayed and prolonged those proceedings.[2]  For example:

- The UK court initially set Kohli's deadline for responding to the United States' extradition request for February 20, 2025 and scheduled his extradition hearings for between June 2 and 4, 2025.  However, Kohli did not submit his responses until April 15, 2025.

- Then, over the weekend before Kohli's Monday, June 2, 2025 extradition hearing, Kohli submitted additional materials to the UK court, including a declaration from Kohli's U.S. defense counsel dated May 28, 2025, a psychiatric report dated May 30, 2025, and submissions from prison consultants dated May 30 and 31, 2025.  Unsurprisingly, Kohli's late submissions caused the UK court to continue his extradition hearings.

- In July 2025, the UK court set the new date for extradition hearings to January 20 to 21, 2026 because Kohli's extradition counsel informed the court that counsel was unavailable before that date.

---

[2] The following chronology is based on information provided by the Department of Justice's Office of International Affairs ("OIA") personnel in the United Kingdom assisting with the United States' extradition request.

Kohli filed the instant motion to dismiss the indictment on November 7, 2025. That very same day, U.S. counsel for Kohli hastened to file a new declaration in the UK extradition proceedings announcing his filing of a motion to dismiss and suggesting that it "could take months" before the Court renders a decision on that motion. This latest declaration takes for granted that this Court will entertain Kohli's motion to dismiss before he appears in the United States; in so doing, it implicitly invites the UK court to wait on a ruling from this Court before finally taking up Kohli's extradition.

## ARGUMENT

Kohli filed his motion to dismiss from the comfort of his home country while he fights extradition. He argues that he is entitled to do so because he has always lived in the United Kingdom, he did not flee the United States, and he "simply wants to remain at home." Dkt. 55 at 19. Even still, Kohli is charged with criminal violations of U.S. law, and he is a fugitive under the analysis of every circuit court to have considered and denied similar requests for relief, as described below. As such, Kohli is not entitled to avail himself of this Court's docket before appearing before this Court and agreeing to be bound by its rulings, favorable or unfavorable to him. Accordingly, the Court should decline to entertain Kohli's motion until such time that he submits himself to the Court's jurisdiction.

Kohli's case is effectively stayed because of Kohli's non-appearance in the district. *See*, *e.g.*, 18 U.S.C. § 3161(c)(1) (setting time for trial based on defendant's first appearance before the court); 18 U.S.C. § 3161(h)(3)(b) (excluding periods of delay based on defendant's absence or unavailability, including when the defendant's "whereabouts are known but … he resists appearing at or being returned for trial"); L.R. 116.1(c)(1) (requiring the government to produce automatic discovery "within 28 days of arraignment"). He has not been extradited. His motion ventures that

3

"[h]e may never be." Dkt. 55. Yet Kohli asks the Court to jump-start the case for the limited purpose of dismissing all charges, without any indication that he is prepared to honor a ruling against him. The Court need not expend its attention on the motion of a defendant who is actively seeking to avoid ever appearing before it.

The Court's inherent authority to defer consideration of Kohli's motion dovetails with the fugitive disentitlement doctrine. "What is known loosely as the fugitive disentitlement doctrine generally permits a federal court to insist on a defendant's presence in the jurisdiction before it resolves challenges to the criminal charges." *United States v. Martirossian*, 917 F.3d 883, 885 (6th Cir. 2019). "Federal courts do not play 'catch me if you can.' If a defendant refuses to show up to answer an indictment, ignores an arrest warrant, or leaves the jurisdiction, the court may decline to resolve any objections to the indictment in his absence." *Id.* Courts have based this doctrine in large part on "mutuality"—the principle that, "if [a criminal defendant] wants the United States to be bound by a decision … he should be similarly willing to bear the consequences of [that] decision." *United States v. Vaulin*, No. 16 CR 438-1, 2017 WL 3334861, at *3 (N.D. Ill. Aug. 4, 2017) (quoting *In re Hijazi*, 589 F.3d 401, 413 (7th Cir. 2009).

All circuits that have considered the question have found that fugitive disentitlement may extend to defendants who merely continue to reside abroad after being charged in the United States. Kohli's motion insists that he is not a fugitive and that he is entitled to seek dismissal based on *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021), in which the Second Circuit held that a defendant charged with committing offenses entirely from her home country of France was not a "fugitive" for "simply remain[ing] at home, as her home country permits her to do." *Bescond*, 24 F.4th at 772. But Kohli's motion altogether ignores not only countervailing opinions from three other circuits, but also a subsequent Second Circuit case underscoring *Bescond*'s narrow scope.

4

In *United States v. Shalhoub*, 855 F.3d 1255 (11th Cir. 2017), the Eleventh Circuit considered the appeal and petition for a writ of mandamus of a defendant denied the opportunity to move to dismiss the indictment under the fugitive disentitlement doctrine. Shalhoub argued that he was not a fugitive because he was living in Saudi Arabia when he was indicted and did not flee the United States. *Shalhoub*, 855 F.3d at 1258-59. The district court found that the fugitive disentitlement doctrine barred Shalhoub's motion because, although Shalhoub was living abroad when indicted, he "constructively fled by not deciding to return" to the United States. *Id.* The district court therefore denied Shalhoub's motion without prejudice to his right to appear and seek dismissal of his indictment. *Id.*

While the Eleventh Circuit held that it lacked appellate jurisdiction over the district court's denial of Shalhoub's motion, the court rejected Shalhoub's arguments that he was not a fugitive in considering Shalhoub's mandamus petition. *Id.* at 1263. ("[W]hether Shalhoub was in Saudi Arabia when the grand jury indicted him is beside the point. … Shalhoub knew of the indictment and refused to surrender himself to the jurisdiction of the court, electing instead not to travel outside of Saudi Arabia to avoid apprehension.") (internal citations omitted). The court concluded: "If Shalhoub wants to challenge the indictment, he need only submit himself to the jurisdiction of the district court." *Id.* at 1265.

The Sixth Circuit held similarly in *United States v. Martirossian*, 917 F.3d 883 (6th Cir. 2019). Martirossian, a citizen of Armenia then living in China, moved to dismiss the indictment (through counsel). The district court held the motion in abeyance under the fugitive disentitlement doctrine. *Martirossian*, 917 F.3d at 886 ("[T]he district court declared him a fugitive and refused to rule on the motion until he submitted himself to the jurisdiction of the [court]—submitted himself, in other words to the benefits *or* burdens of the ruling."). Martirossian appealed and

5

petitioned for a writ of mandamus, claiming that he could not be a fugitive from the United States because he had never traveled to the country and his targeted conduct occurred abroad. *Id.* at 888.

The Sixth Circuit similarly held that it lacked jurisdiction over Martirossian's appeal but rejected Martirossian's claim that he was not a fugitive in denying his mandamus petition. *Id.* at 890 ("We have previously applied the doctrine to litigants who, like Martirossian, do not surrender themselves to law enforcement authorities. … So too, a defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight."). The court noted that "the [fugitive disentitlement] doctrine promotes judicial economy because it frees judges from giving what amount to advisory opinions that are unlikely to be enforced if the court rules against the fugitive." *Id.* And the court concluded:

> [Martirossian] has a readily available means of obtaining a ruling on his motion to dismiss the indictment. He can show up in the Southern District of Ohio, and the court as promised will decide his motion. A multi-national businessman willing to work with an Ohio company must take the bitter with the sweet. The benefit of working with an Ohio company comes with the duty to answer a charge of violating federal law arising from that work—or at least agreeing to be bound by any ruling, whether for him or against him. Yet none of the pleadings filed by Martirossian's lawyers indicates that he would agree to submit to the court's jurisdiction if the court ruled against his motion to dismiss the indictment[.]

*Id.* at 889–90.

The Seventh Circuit has opined that similarly situated defendants were properly considered fugitives. First, in *United States v. Bokhari*, 757 F.3d 664 (7th Cir. 2014), the defendant was charged with conduct beginning in the United States and continuing after he moved to Pakistan. After Pakistan refused to extradite Bokhari (a dual citizen of Pakistan and the United States), Bokhari's attorneys moved to dismiss the indictment. The district court denied Bokhari's motion without prejudice under the fugitive disentitlement doctrine. *Bokhari*, 757 F.3d at 666-68. Bokhari argued that he was not a fugitive because he left the United States years before he was

6

indicted. *Id.* at 672. While the Seventh Circuit resolved the appeal on other grounds (and therefore did not reach the fugitive disentitlement question), it stressed that its opinion should "in [no] way suggest that the district court [ ] err[ed] in finding that Bokhari was a fugitive, or that it abused its discretion in applying the doctrine to him." *Id.* at 673 n.7. Rather, it approvingly cited the district court's statement that "[t]he fugitive disentitlement doctrine stands for the proposition that those who flee from judicial process may not benefit from it," and it observed that Bokhari would not benefit from filing his motion (consistent with the core purpose of the fugitive disentitlement doctrine) because the court dismissed the appeal on other grounds. *Id.* (internal quotation marks and citation omitted).

Second, *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014) concerned a Nigeria-based defendant who had never entered the United States and who had successfully resisted extradition proceedings in the United Kingdom on U.S. charges before returning to Nigeria. The Seventh Circuit rejected Kashamu's speedy trial challenge to the indictment in part because Kashamu was a fugitive. *Kashamu*, 769 F.3d at 493 ("It's true that Kashamu didn't literally flee the United States, since he was never in the United States. But he knew he was under indictment in this country, yet rather than come here to fight the validity of the government's charges, he fought tooth and nail (and successfully) to prevent his being extradited from the United Kingdom to the United States. He not only was functionally a fugitive ... he deliberately forewent the opportunity for a speedy trial.") (internal citations omitted). The court concluded: "If [Kashamu] wants to fight the charges, he has only to fly from Lagos to Chicago; there are loads of reasonably priced flights." *Id.* at 494.[3]

---

[3] *But see Hijazi*, 589 F.3d at 408-12 (finding fugitive disentitlement improper where defendant raised "important[t] and delica[te]" questions about the extraterritorial reach of the charges). *See also United States v. Vaulin*, No. 16 CR 438-1, 2017 WL 3334861, at *4 (N.D. Ill. Aug. 4, 2017) ("While *Hijazi* identifies circumstances in which a court should be wary of invoking

7

At least one court outside the Second Circuit has declined to follow *Bescond* in light of these other circuits' precedents. In *United States v. Osipov*, No. 22-CR-369-TSC-ZMF (D.D.C.), the Magistrate Judge issued a Report and Recommendation, which explained:

> Defendant Vladislav Osipov is trying to have his cake and eat it, too. He is a fugitive who is avoiding the court. Simultaneously, he is moving from the comfort of his residence in Switzerland to dismiss the charges against him. Defendants who want to make use of a court must first appear before it.

*Osipov*, 2024 WL 4367523, at *1 (D.D.C. Oct. 1, 2024). Examining *Kashamu*, *Martirossian*, and *Bescond*, the court found the Second Circuit's narrower definition in *Bescond* "unpersuasive." *Id.* at *3 ("It is antiquated thinking to employ a cramped definition of fugitive focused on the location of the crime and criminal in an increasingly borderless world where crime—like work, marriages, and funerals—can be done completely remotely."). Because "[t]he fugitive disentitlement doctrine applies to foreign defendants who refuse to appear," the Magistrate Judge recommended that Osipov be disentitled from seeking dismissal.[4]

Against these other rulings, Kohli relies on *Bescond* alone in insisting that he is not a fugitive. But the Second Circuit subsequently distinguished *Bescond* in a case far more analogous to Kohli's circumstances.

In *United States v. Bardakova*, 145 F.4th 231 (2d Cir. 2025), a defendant living in Russia was indicted for conspiring to help a Russian industrial magnate evade U.S. sanctions and for making false statements to the FBI. Bardakova's alleged conduct included acting from Russia as an intermediary between the magnate and a U.S.-based co-defendant; directing the co-defendant

---

the fugitive disentitlement doctrine, the Seventh Circuit has more recently discussed circumstances in which it may be proper to do so.") (citing *Bokhari* and *Kashamu*).

[4] As of this filing, the District Judge has taken no action on Osipov's motion to dismiss or the Magistrate Judge's Report and Recommendation.

8

to purchase items for the magnate in the United States; and, at one point during the conspiracy, traveling to the United States on the magnate's behalf to make arrangements for a child of the magnate to be born in Los Angeles. After the FBI interviewed Bardakova in Los Angeles, she returned home to Russia. *Bardakova*, 145 F.4th at 237-39. She was subsequently indicted, and she moved to dismiss the indictment from Russia. Rather than reaching the merits of her motion, the district court determined that she was a fugitive disentitled to relief from the court. *Id.* at 239.

The Second Circuit affirmed that determination and distinguished Bardakova's case from *Bescond*. "Bardakova's alleged domestic conduct distinguishes her from defendants whom courts have not considered fugitives—namely, foreign nationals indicted for conduct that occurred entirely abroad." *Id.* at 242 (citing *Bescond*).[5] Although Bardakova was "a Russian citizen domiciled in Russia with no family, bank accounts, or real estate in the United States[,]" the Second Circuit concluded that she "remain[ed] abroad at least in part to avoid prosecution." *Id.* at 245. Considering "mutuality," the court again distinguished Bardakova's case from *Bescond* based on her contacts with the United States. *Id.* at 246 ("Bardakova, unlike Bescond, allegedly committed much of the charged conduct in the United States. And she, unlike Bescond, has benefitted from her ties to the United States, including by traveling here to give birth to her own son—making him a U.S. citizen[.]"). Unlike Bescond, "Bardakova ha[d] not merely stayed home—she came to the United States and allegedly engaged in the criminal conduct charged in the indictment." *Id.* The Second Circuit concluded: "In short, Bardakova's case is far more run-of-the-mill than Bescond's—she allegedly committed a crime on U.S. soil, then left. The district

---

[5] The Second Circuit further explained that this distinction was based on "extraterritoriality concerns—the risk that the government could aggressively apply criminal statutes to foreign defendants and, rather than grapple with whether the statutes can be read to reach their foreign conduct, simply move to disentitle those who mount an extraterritoriality challenge." *Id.*

9

court properly determined that disentitlement would disincentivize future defendants from doing the same." *Id.* at 247.

Under the majority view of the Sixth, Seventh, and Eleventh Circuits, there is no question that Kohli is a fugitive. Although Kohli was living in the United Kingdom at the time he was indicted, he has "refused to surrender himself to the jurisdiction of the court." *Shalhoub*, 855 F.3d at 1263. *See also Martirossian*, 917 F.3d at 890 ("the mere refusal to report for prosecution can constitute constructive flight"). So long as he remains in the United Kingdom and contests his extradition to the United States, Kohli remains a fugitive.

But even under the Second Circuit's cases, Kohli is a fugitive. Unlike Bescond—and like Bardakova—Kohli did not "merely stay at home." He held himself out as a leader of a cryptocurrency company incorporated in Massachusetts. Dkt. 10, ¶¶ 7, 9. He led and promoted Saitama with individuals located in Washington, California, Texas, and Massachusetts. *Id.* ¶¶ 2-6, 9. The indictment provides numerous examples of how Kohli coordinated with these co-conspirators in furtherance of the charged conspiracy. But the indictment does not present an exhaustive accounting of Kohli's conduct in furtherance of that conspiracy, and Kohli did not merely participate in the conspiracy from the United Kingdom. As the government previously described in the UK extradition proceedings, Kohli engaged in conduct in the United States. *See* May 23, 2025 Declaration of David M. Holcomb (attached as Exhibit A), ¶¶ 6-10. Most to the point, Kohli traveled to the United States at least twice for events to promote Saitama and the Saitama Token, in furtherance of the charged conspiracy. *Id.* ¶ 10. During those trips, Kohli sold

Saitama Tokens. *Id.* Like Bardakova, Kohli "came to the United States and allegedly engaged in the criminal conduct charged in the indictment." *Bardakova*, 145 F.4th at 246.[6]

On top of his physical presence in the United States, Kohli promoted Saitama to investors in the U.S. market, via U.S.-based social media and communications platforms (*e.g.*, Twitter). Exhibit A, ¶ 10. He exchanged messages with the U.S.-based co-conspirators to promote Saitama and to synchronize manipulative purchases of the Saitama Token. *Id.* ¶¶ 8, 10. He used service providers, banks, and trading platforms based in the United States. *Id.* ¶ 10. And, when Kohli relocated Saitama's legal registration to the United Arab Emirates, he dissolved the Saitama LLC legal registration with the Massachusetts Secretary of the Commonwealth. *Id.* Kohli personally made profits of over $20 million through sales of the Saitama token. *Id.* ¶ 3. In these ways, Kohli, like Bardakova, "benefitted from [his] ties to the United States." *Bardakova*, 145 F.4th at 246.

With Kohli's fugitivity firmly established, the Court should decline to consider his motion to dismiss (or any other motion that he files) while he fights his extradition. Fugitive disentitlement here would serve the principal purposes cited in the cases discussed above. It would conserve the Court's resources until such time as Kohli actually appears. And it would insist on "mutuality"— that, if Kohli wants the United States to be bound by a decision, he should be similarly willing to bear the consequences of that decision.

---

[6] Similarly, whereas Kohli engaged in conduct both within and outside the United States, his case does not raise the "extraterritoriality concerns" that *Bescond* presented. *Bardakova*, 145 F.4th at 242 (distinguishing *Bescond*).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Kohli's motion without prejudice or, alternatively, enter an order holding the motion in abeyance until such time that he appears before the Court.[7]

                                                  Respectfully submitted,

                                                  LEAH B. FOLEY
                                                  UNITED STATES ATTORNEY

By:    */s/ David M. Holcomb*
        DAVID M. HOLCOMB
        Assistant United States Attorney

Date:  November 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on November 21, 2025 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

By:    */s/ David M. Holcomb*
        DAVID M. HOLCOMB
        Assistant United States Attorney

---

[7] Should the Court decide to hold Kohli's motion in abeyance, the government respectfully requests that the Court enter an order to that effect so the pendency of this motion does not serve as cause for further delay of Kohli's extradition proceedings in the United Kingdom.